IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| COMMER GLASS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DONALD T. VAUGHN, et al. | : | NO. 91-963 |


<u>MEMORANDUM</u>

Bartle, J.                                              June 29, 2016

        Before the court is the motion of Commer Glass
("Glass") for relief from judgment under Rule 60(b)(6) of the
Federal Rules of Civil Procedure.[1]  That subsection of the Rule
provides for relief from a final judgment for "any other reason
that justifies relief."  <u>See</u> Fed. R. Civ. P. 60(b)(6).  Glass
originally filed this motion pro se but has since obtained
counsel.  Counsel has filed briefs in support of his motion.

                                I.

        This case has a long and complicated history.  Glass
was convicted by a jury in November 1976 for murder in the
first-degree of his former girlfriend Billie Ann Morris
("Morris") in the Pennsylvania Court of Common Pleas for
Philadelphia County.  He was represented at trial by Barry
Denker ("Denker").  Trial began five days after Denker stated to

_____

1.  Although his pro se motion cites Rule 60(b)(5), Glass has
clarified in a brief submitted by counsel that he seeks relief
under Rule 60(b)(6).

the trial court:  "I haven't looked at this case" and "I am not going to be prepared to start."

The Commonwealth presented thirteen witnesses at trial.  The testimony and evidence demonstrated that, on the night of her murder, Morris was socializing at a friend's apartment with three other women when Glass arrived.  Glass and Morris then left the apartment together.  Less than three minutes later, Morris was fatally stabbed outside the apartment. Witnesses heard a woman screaming and observed a man loading a woman into a car that matched the description of Glass's car.

Trial evidence also demonstrated that Glass had a history of violence against Morris, including punching her in the jaw and leg and firing a pistol into her house.  Glass had previously threatened to "get" Morris.  Morris had written in her diary that Glass "is losing his mind and it scares me to death."  The day before the murder, in apparent reference to Morris, Glass had stated that "women do what I say do, if not I kill them."

Glass did not present witnesses at trial and he did not testify.  In closing arguments to the jury, defense counsel Denker argued that there was insufficient evidence to prove that Glass had killed Morris.  Denker asserted that Glass was not present at the time of Morris's stabbing.  Denker maintained that although Glass and Morris had left the friend's apartment

-2-

together, they purportedly decided to travel separately to Morris's apartment.  Twelve minutes later, when Morris had not arrived at his apartment, Denker contended that Glass returned to where he had left her, found that she had been stabbed, and drove her to the hospital.

The defense theory was consistent with the statement that Glass had made to police the morning after the murder and conversations that he had had with counsel.  Approximately eighteen years later, at hearings before the federal magistrate court in 1993 and district court in 1994, Glass testified that he "never told Denker a different story in spite of the fact he believed it may have been possible he committed the murder." See Glass v. Vaughn, 860 F. Supp. 201, 204 (E.D. Pa. 1994), rev'd, Glass v. Vaughn, 65 F.3d 13, 14 (3d Cir. 1995). According to Glass, he told Denker that he had previously served in the military but did not describe his experiences or his symptoms of post-traumatic stress disorder ("PTSD").  Glass did not inform Denker that he had been discharged from service after being referred to a psychiatrist because of behavioral problems. While in the service, Glass was involved in heavy combat and saw many people, including friends, killed.  He himself killed Vietnamese civilians on at least two occasions.  He took the life of a Vietnamese woman who he believed had made a threatening gesture towards another soldier after a sexual

-3-

encounter.  He also killed a woman and some children when he shot a grenade towards some movement during a firefight.

In his testimony at the 1993 and 1994 hearings, Glass indicated that he "also never told Denker of his episodes of bizarre behavior, including blacking-out, after returning home from Vietnam."  See id.  These behavioral abnormalities included nightmares, inability to sleep, hyperactivity, excessive sweating, blackouts, sudden rages, memory loss, attempted suicide, self-isolation in his basement, frequent crying spells, and strange reactions to environmental conditions such as rain or loud noises.  He also had acted violently.  He swung a packing hook into a table and shoved his wife's head into an oven.  Nonetheless, "[i]n essence, no person volunteered any information to Denker and Denker never sought any information that would have alerted him to the possibility of a psychiatric defense."  See id.

The jury convicted Glass of first-degree murder, and he was sentenced to life in prison.  Subsequently, in either 1979 or 1980, a psychologist at the Pennsylvania State Correctional Institution at Graterford diagnosed Glass as suffering from PTSD.

Glass filed post-verdict motions in the Court of Common Pleas of Philadelphia County.  Timothy Crawford

-4-

("Crawford") was appointed to argue those motions on behalf of Glass.  The motions were denied.

Crawford then filed a direct appeal to the Pennsylvania Supreme Court on behalf of Glass.  He argued that there was insufficient evidence to convict Glass of first-degree murder, that it was error for the court to admit testimony that Glass had threatened the victim prior to her death, and that it was error to admit testimony of a police officer concerning Glass's arrest ten months prior to the murder after he allegedly fired a bullet into the window of the house where the victim had been staying.  See Commonwealth v. Glass, 405 A.2d 1236, 1240 (Pa. 1979).  Crawford also claimed that the trial court erred in failing to include a cautionary instruction to the jury in considering this testimony.  See id. at 1241.  Finally, Crawford also argued that Glass "received ineffective assistance of counsel because his trial counsel failed to object to allegedly prejudicial statements made by the prosecutor during his closing argument to the jury and also failed to preserve these objections in his post-trial motions."  See id.  In this regard, Crawford contended that it was improper for the prosecutor to characterize Glass's prior beating of Morris as severe and to say that Glass lied to police.

The Pennsylvania Supreme Court denied his appeal on the merits.  With regard to those claims that trial counsel was

-5-

ineffective, the Court explained that "counsel cannot be held to be ineffective for failing to pursue a meritless claim." See id. at 1243.

In 1978, Glass filed prematurely a pro se petition for relief under the Pennsylvania Post Conviction Hearing Act ("PCHA"), 42 Pa. Cons. Stat. § 9541 et seq., in the Court of Common Pleas of Philadelphia County.  A third attorney, Daniel Preminger ("Preminger"), was appointed to represent him and filed an amended PCHA petition in 1981.  There, Preminger argued that trial counsel was ineffective in failing to request cautionary jury instructions concerning the evidence of prior acts of violent activity and in failing to assert these grounds in his post-verdict motions.  Denker, Glass's trial counsel, testified that he chose not to request a cautionary instruction because doing so would highlight that evidence and thus increase its influence on the jury.  The Common Pleas Court denied relief.

A fourth attorney, Vivian A. Sye-Payne ("Sye-Payne"), was subsequently appointed to represent Glass in his appeal to the Pennsylvania Superior Court of the denial of relief on his PCHA petition.  Here, Sye-Payne reasserted arguments made in prior proceedings concerning trial counsel's failure to request a cautionary instruction.  The Superior Court affirmed the denial of relief on this ground because "trial counsel did have

a reasonable basis for not requesting the cautionary instructions and he, therefore, cannot be found to be ineffective." See Commonwealth v. Glass, No. 2402, at 2 (Pa. Super. Ct. 1982).  Sye-Payne also alleged that Preminger, who had represented Glass in filing his PCHA petition, was ineffective in failing to assert Glass's PTSD as a basis for a diminished capacity defense.  See id. at 3-5; Glass v. Vaughn, 1993 WL 76231, at *1 (E.D. Pa. Mar. 16, 1993).  The Superior Court denied the claim that Preminger provided ineffective assistance of counsel.  It explained that Glass "does not argue that post-traumatic stress disorder negates the ability to formulate or carry out a plan." See Commonwealth v. Glass, No. 2402, at 5 (Pa. Super. Ct. 1982).

Glass subsequently filed a pro se federal habeas petition under 28 U.S.C. § 2254 in which he for the first time alleged, among other things, that he had received ineffective assistance of trial counsel because Denker had not investigated and asserted a diminished capacity defense based on Glass's PTSD.  This petition was denied in 1987 for failure to exhaust state remedies.  See Glass v. Zimmerman, 1987 WL 10094, at *2 (E.D. Pa. Apr. 27, 1987).

In 1989, Glass filed a second PCHA petition in the state court.[2] He, for the first time in state court, alleged that trial counsel Denker had been ineffective in failing to raise the issue that Glass's PTSD negated the specific intent necessary to commit first-degree murder.  The Court of Common Pleas denied his petition without an evidentiary hearing for lack of standing pursuant to a recent decision of the Pennsylvania Supreme Court in Commonwealth v. Lawson, 549 A.2d 107 (Pa. 1988).  There, the Pennsylvania Supreme Court had held that "a second or any subsequent post-conviction request for relief will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred."  See id. at 112.  Relying on Lawson, the Court of Common Pleas reasoned that "since this is the defendant's second petition for relief and he has failed to allege or demonstrate a miscarriage of justice, his petition need not be considered."  See Glass v. Vaughn, 1993 WL 76231, at *2 (E.D. Pa. Mar. 16, 1993) (quoting Commonwealth v. Glass, No. 1379 (Pa. Ct. Comm. Pleas Aug. 15, 1989).  Significantly, Glass did not appeal the state court's denial of his second PCHA petition.

---

2.  The Post Conviction Hearing Act, 42 Pa. Cons. Stat. § 9541 et seq., was renamed the "Post Conviction Relief Act" in 1988. We herein refer to both of Glass's post-conviction petitions filed under this Act as "PCHA" petitions in the interest of consistency.

In February 1991, Glass filed a second federal habeas petition under § 2254.  At the district court's direction, the magistrate court held an evidentiary hearing.  Denker could not be located to provide testimony.[3]  In December 1993, the magistrate court issued a Report and Recommendation concluding that Denker had been ineffective at trial.  It determined that had evidence of Glass's PTSD "been presented, there is a <u>fair probability</u> that the jury would have found that the petitioner could not form the specific intent to kill and on that basis found him guilty of third degree murder instead of first degree murder."  <u>See</u> R. & R. at 26 (emphasis added).

The district court thereafter held an evidentiary hearing in February 1994.  Although it found that Glass's failure to appeal the denial of his <u>second</u> PCHA petition caused a procedural default of his claim, it granted habeas relief because it found that there was "certainly a fair probability that a trier of fact would have entertained a reasonable doubt as to his guilt of murder in the first degree."  <u>See</u> <u>Glass v. Vaughn</u>, 860 F. Supp. 201, 215-16 (E.D. Pa. 1994), rev'd, <u>Glass v. Vaughn</u>, 65 F.3d 13, 14 (3d Cir. 1995).  The district court held that a fundamental miscarriage of justice occurred when Denker failed to investigate Glass's military experience and

_____

3.  Denker had been convicted of certain federal crimes and placed in the witness protection program.

bizarre conduct.  It determined that this miscarriage of justice
excused the procedural default.

In 1995, our Court of Appeals reversed "because
[Glass's] current [second] habeas claim was procedurally
defaulted in state court and he does not fall within the 'actual
innocence' exception recently set forth in <u>Schlup v. Delo</u>."  <u>See</u>
<u>Glass v. Vaughn</u>, 65 F.3d 13, 14 (3d Cir. 1995) (citing <u>Schlup v.</u>
<u>Delo</u>, 513 U.S. 298, 314-15 (1995)).  While the Court of Appeals
agreed with the district court that Glass's claim for relief
based on trial counsel's ineffectiveness was procedurally
defaulted, it held that Glass had not made out a claim of actual
innocence to overcome the procedural default.  Applying <u>Schlup</u>,
which had been decided by the United States Supreme Court while
the appeal of the grant of habeas relief for Glass by the
district court was pending, the Court of Appeals explained:

> we cannot conclude under the <u>Schlup</u> test
> that petitioner has shown that it is more
> likely than not that <u>no</u> rational juror would
> have voted to convict Glass.  Therefore,
> petitioner's actual innocence claim is
> doomed under the <u>Schlup</u> standard.
>
> The gravamen of Glass' psychiatric evidence
> was that he was suffering from PTSD and was
> in a dissociative state at the time of the
> murder, having no intent to kill and no
> recollection of the murder after it
> happened.  These psychiatric opinions,
> however, were based entirely on Glass'
> subjective reporting and were arrived at
> years after the crime.  On the other hand,
> there was evidence that Glass went to the

> murder scene armed and that he had earlier
> behaved violently towards the victim.
> Moreover, when arrested, Glass did not give
> the police the explanation he now proffers-
> that he had no memory of what happened-but
> relied instead on an alibi that he was not
> even at the scene when the killing occurred.
> Based on this record we cannot conclude that
> <u>no</u> rational juror would have voted to
> convict Glass of first-degree murder.

<u>Glass v. Vaughn</u>, 65 F.3d 13, 16-17 (3d Cir. 1995).

II.

Glass brought the pending motion almost twenty years
after our Court of Appeals denied relief on his second habeas
petition.  He seeks relief under Rule 60(b)(6) of the Federal
Rules of Civil Procedure, which is a catchall provision
permitting a court to award relief from a final judgment for
"any other reason that justifies relief."  <u>See</u> Fed. R. Civ. P.
60(b)(6).  A motion under Rule 60(b)(6) will not succeed absent
"'extraordinary circumstances' justifying the reopening of a
final judgment."  <u>See</u> <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 535
(2005).  A change in the law, "without more, does not entitle a
habeas petitioner to Rule 60(b)(6) relief."  <u>Cox v. Horn</u>,
757 F.3d 113, 124 (3d Cir. 2014).

While Rule 60(b)(6) provides relief under certain
circumstances, it is applied "only to the extent that [it is]
not inconsistent with" other applicable federal statutes.  <u>See</u>
<u>Gonzalez</u>, 545 U.S. at 529 (internal quotation marks omitted).

-11-

The Antiterrorism and Effective Death Penalty Act of 1996 limits the power of a federal court to award relief to a state prisoner who has not fully pursued his claim for relief in state court. Habeas relief is not available unless "the applicant has exhausted the remedies available in the courts of the State." See 28 U.S.C. § 2254(b)(1)(A). A claim is exhausted if the petitioner no longer has any possible avenue for relief in state court. "However, as the Supreme Court pointed out . . . federal courts must 'ask not only whether a prisoner has exhausted his state remedies, but also whether he has <u>properly</u> exhausted those remedies, <u>i.e.</u>, whether he has fairly presented his claims to the state courts.'" <u>Cristin v. Brennan</u>, 281 F.3d 404, 410 (3d Cir. 2002) (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848 (1999)). Under the "closely related" procedural default doctrine, a claim not properly exhausted in the state court is procedurally defaulted. <u>See id.</u> "The failure to 'fairly present' federal claims in state court bars the consideration of those claims in federal court by means of habeas corpus because they have been procedurally defaulted." <u>Id.</u> (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90 (1977)). "This rule yields only when 'the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'"

-12-

Norris v. Brooks, 794 F.3d 401, 404 (3d Cir. 2015) (quoting

Coleman, 501 U.S. at 750).

        Thus, a procedurally defaulted claim is reviewable by

the federal court if the petitioner demonstrates that there was

cause for the default and prejudice as a result.  See id.; Cox,

757 F.3d at 119.  Up until 2012, when the district court

addressed a habeas petition, as it had done here, it was bound

by the rule announced in Coleman "that error by counsel in state

post-conviction proceedings could not serve as 'cause'

sufficient to excuse procedural default of a petitioner's

claim."  See Cox, 757 F.3d at 119 (citing Coleman, 501 U.S. at

752-54).

        Nonetheless, in 2012, the Supreme Court carved out a

"narrow exception" to this rule in Martinez v. Ryan, 132 S. Ct.

1309, 1316-18 (U.S. 2012).  "Under Martinez, the failure of

collateral attack counsel to raise an ineffective assistance of

trial counsel claim in an initial-review collateral proceeding

can constitute 'cause' if (1) collateral attack counsel's

failure itself constituted ineffective assistance of counsel

under Strickland[ v. Washington, 466 U.S. 668 (1984)] and (2)

the underlying ineffective assistance of trial counsel claim is

'a substantial one,' which is to say 'the claim has some

merit.'"  See Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014)

(quoting Martinez, 132 S. Ct. at 1318); Cox, 757 F.3d at 119.

-13-

Thus, where a petitioner seeks relief in spite of a prior procedural default, review is available if the default was caused by the failure of post-conviction counsel in the initial review collateral proceeding to assert a challenge to the effectiveness of trial counsel and the underlying claim that trial counsel was ineffective is a "substantial claim." See Martinez, 132 S. Ct. at 1320. However, "the holding in [Martinez] does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." See id.

This limited holding in Martinez allowing petitioners to raise the ineffectiveness of post-conviction counsel for the first time in their habeas petitions to the federal court originally applied only when the petitioner was unable to raise trial counsel's ineffectiveness in state court on direct appeal of the conviction. See id. However, a year later in Trevino v. Thaler, 133 S. Ct. 1911 (U.S. 2013), "the Supreme Court clarified that the Martinez rule applied not only to states that expressly denied permission to raise ineffective assistance claims on direct appeal . . . but also to states in which it was 'virtually impossible,' as a practical matter, to assert an ineffective assistance claim before collateral review." See

-14-

Cox, 757 F.3d at 119 (citing Trevino, 133 S. Ct. at 1915).
Where a "state procedural framework, by reason of its design and
operation, makes it highly unlikely in a typical case that a
defendant will have a meaningful opportunity to raise a claim of
ineffective assistance of trial counsel on direct appeal, [the]
holding in Martinez applies."  See Trevino, 133 S. Ct. at 1921.

     We are uncertain whether our Court of Appeals would
apply Martinez to the present case.  However, Martinez applies
to Pennsylvania state convictions following Commonwealth v.
Grant, 813 A.2d 726 (Pa. 2002), where the Pennsylvania Supreme
Court held that ineffective assistance of counsel claims could
not be raised until collateral review.  See Cox, 757 F.3d at 124
n.8; Grant, 813 A.2d at 738.  Glass's conviction and post-
conviction proceedings in state and federal court all took place
before Grant was decided.  At that time, "Pennsylvania required
a criminal defendant to raise ineffective assistance claims at
the earliest stage of proceedings during which he was no longer
represented by the allegedly ineffective lawyer, for example,
the post-trial motions phase or direct appeal."  See Cox,
757 F.3d at 124 n.8.  Nonetheless, we will assume for present
purposes that our Court of Appeals would apply Martinez to
Pennsylvania criminal proceedings that took place prior to
Grant.

-15-

III.

Glass contends that he is entitled to relief under Martinez because PCHA counsel Preminger was ineffective in failing to raise trial counsel Denker's ineffectiveness in his first PCHA petition.  Glass asserts that Preminger was aware that Glass had served in Vietnam and been diagnosed with PTSD, yet Preminger did not investigate this matter or raise it during the PCHA hearing.  Glass claims that Preminger's ineffectiveness is cause to excuse the procedural default of his underlying claim that trial counsel was ineffective under Martinez.

Glass cannot obtain relief under Rule 60(b)(6).  Even if Preminger caused a procedural default in the first PCHA petition and Martinez excused that default, there is no cause to excuse Glass's separate procedural default for failing to appeal the PCHA court's denial of his second PCHA petition.[4]  In overturning the district court's grant of habeas relief with respect to his second federal § 2254 petition, our Court of Appeals explicitly stated that Glass's procedural default of his second state PCHA petition precluded habeas relief here:

---

4.  As outlined in detail above, the state court denied Glass's first PCHA petition and he appealed.  After the PCHA petition was denied on appeal, Glass filed a federal habeas petition.  This petition was denied on exhaustion grounds.  Glass then filed a second PCHA petition.  Though the PCHA court denied that petition, Glass did not appeal that decision.  Instead, he returned to federal court and filed a second habeas petition for relief.  This is the habeas petition that was before the Court of Appeals.

-16-

> Glass filed various direct appeals and
> habeas proceedings, including this petition
> alleging that Attorney Denker was
> ineffective because he failed to investigate
> and pursue a diminished capacity defense.
> Glass presented and lost on this allegation
> of error before the state trial court in his
> <u>second</u> postconviction relief petition.
> <u>Unfortunately, he did not appeal.  Thus, the</u>
> <u>district court held that petitioner's</u>
> <u>federal habeas claim was both exhausted and</u>
> <u>procedurally defaulted</u>.  Without the "actual
> innocence" exception, the court noted that
> his habeas claim would accordingly be
> barred.  We agree.

<u>Glass v. Vaughn</u>, 65 F.3d 13, 15 (3d Cir. 1995) (citation

omitted).  Regardless of whether <u>Martinez</u> excuses Preminger's

failure to raise trial counsel's ineffectiveness in the <u>first</u>

PCHA petition, Glass's default in failing to appeal to the

Pennsylvania Superior Court the PCHA court's denial of his

<u>second</u> petition precludes relief.

Rule 60(b)(6) makes a limited exception to finality in

certain circumstances, one of which is outlined in <u>Martinez</u>.

The limited exception in <u>Martinez</u> applies only when a petitioner

procedurally defaults his claim that trial counsel was

ineffective because post-conviction counsel erroneously failed

to raise that claim in the <u>first</u> collateral proceeding.  It does

not excuse Glass's procedural default in failing to appeal the

state PCHA court's denial of his <u>second</u> PCHA petition.  <u>Martinez</u>

applies only to attorney error in initial-review collateral

proceedings, not appeals from those proceedings.  See <u>Martinez</u>,

-17-

132 S. Ct. at 1320.  Our Court of Appeals has already determined Glass's default on the second PCHA petition bars review of his claim.

In Cristin, the petitioner had "twice failed to present the claims of error he asserts in federal court to the appellate courts of the Commonwealth." See Cristin, 281 F.3d at 410.  First, he "failed to take a direct appeal from his conviction to the Superior Court." See id.  Second, he "did not appeal the rejection of his PCRA petition to the Superior Court, thereby creating a second procedural default." See id. at 411. In that case, the Court of Appeals held that the petitioner "must establish either 'cause and prejudice' for both defaults or demonstrate that a 'fundamental miscarriage of justice' will result from his continued incarceration." See id. at 412 (emphasis added).  Likewise, here, Glass must not only provide cause for PCHA counsel's failure to raise trial counsel's ineffectiveness in the first PCHA petition, but he must establish cause to excuse his own failure to appeal the state court's denial of his second PCHA petition.

Glass claims that he did not appeal the state court's denial of his second PCHA petition because of the Pennsylvania Supreme Court's holding in Lawson that a petitioner could not bring a successive habeas petition in state court without a strong prima facie showing that a miscarriage of justice

-18-

occurred.  See Lawson, 549 A.2d at 112.  Lawson was handed down

by the Pennsylvania Supreme Court after the federal district

court had rejected Glass's first habeas petition as unexhausted

under the prior Pennsylvania rule allowing petitioners to file

multiple PCHA petitions in state court.  Glass claims that, in

light of Lawson, "he recognized that his claim was already

procedurally defaulted and opted not to waste additional time

litigating in a forum that lacked jurisdiction over his claim."

        This argument ignores the holding of our Court of

Appeals that Glass defaulted his claim that trial counsel was

ineffective when "[u]nfortunately, he did not appeal" the state

court's denial of his second PCHA petition.[5]  See Glass v.

Vaughn, 65 F.3d 13, 15 (3d Cir. 1995).  Glass may not short-

circuit the state post-conviction proceedings and proceed

directly to federal court simply because he believed that his

claim was unlikely to succeed in the state appellate court.  See

Cristin, 281 F.3d at 411.  We will not rewrite the well-

established principles of federalism as they apply to habeas

relief, which are "grounded in principles of comity; in a

federal system, the States should have the first opportunity to

_____

5.  The district court had likewise "found that petitioner
exhausted his state remedies because it would now be futile to
appeal to state court an adverse judgment from his second Post-
Conviction Relief Act hearing. . . . However, this failure to
appeal also constituted a procedural default."  See Glass v.
Vaughn, 860 F. Supp. 201, 215 (E.D. Pa. 1994) (citing Glass v.
Vaughn, 1992 WL 696986, at *5 (E.D. Pa. Nov. 19, 1992)).

address and correct alleged violations of state prisoner's federal rights." See id. at 410 (quoting Coleman, 501 U.S. at 731).  The procedural default "doctrine 'encourage[s] state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.'"  See id. (citing Rose v. Lundy, 455 U.S. 509, 518–19 (1982)).

Glass's Rule 60(b)(6) motion for relief based on Martinez must fail because regardless of whether Martinez excuses his failure to raise the ineffective assistance of trial counsel in his first PCHA petition, Martinez does not excuse his default in failing to appeal the state court's denial of his second PCHA petition.  Aside from relying on Martinez, Glass does not assert any other ground to excuse his procedural default in the second PCHA petition.  "The problem is that an unstated but critical premise of Cox and our other Rule 60(b) cases is that a change in the law doesn't even begin to support a Rule 60(b) motion unless the change is actually relevant to the movant's position."  Norris, 794 F.3d at 405.  Because Glass "cannot establish either cause and prejudice or a miscarriage of justice to excuse his failure to appeal the adverse result of his PCRA proceedings," we must deny relief.  See Cristin, 281 F.3d at 419.

Accordingly, we will deny the motion of Glass for relief from judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure.